

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT M. BURGER, )
)
)
Plaintiff, ) Case No. 03 C 8068
v. )
) Judge Virginia M. Kendall
INTERNATIONAL UNION OF ELEVATOR )
CONSTRUCTORS LOCAL 2, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert M. Burger ("Burger") sued the International Union of Elevator Constructors Local 2 ("Local 2") for retaliation on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA") and for breach of the duty of fair representation. A jury found Local 2 liable on both counts and awarded damages for back pay, lost future earnings, and mental and emotional damages. Local 2 renews its motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), and moves in the alternative to remit a portion of the damage award pursuant to Rule 59(e). Burger also moves pursuant to Rule 59(e) to amend the judgment to include liquidated damages and attorney costs.

## Background

Burger was born in 1961. He joined the International Union of Elevator Constructors in Los Angeles in 1987, and then joined Local 2 when he moved to Chicago around 1991. From 1987 to 2003, Burger worked as an Elevator Mechanic Helper ("Helper") employed by various employers. In or about July 2002, Local 2's parent union entered into a new Master Agreement (the "July 2002 Master Agreement") with participating employers. The July 2002 Master Agreement instituted a

formal apprenticeship program that consisted of four years of classes and on-the-job training. Burger chose not to enter the apprenticeship program. He filed a charge with the National Labor Relations Board ("NLRB") regarding the apprenticeship program on September 27, 2002. That charge was dismissed without hearing.

Burger continued to work as a Helper until February 11, 2003, when he was fired from a position with Mid-America/Phoenix Elevator Company. That same day, Burger reported to Local 2 that he was out of work. On March 4, 2003 Burger applied for a reduced fee union card for the second quarter of 2003. Reduced fee cards are available to union members who are unemployed. Burger was issued that card effective April 1, 2003. On April 15, 2003, Burger filed charges with the Equal Employment Opportunity Commission ("EEOC") claiming age discrimination by Local 2 based on the implementation of the apprenticeship program and the new layoff language in the July 2002 Master Agreement. That charge was dismissed without hearing.

In mid-June 2003, Burger applied for a second reduced fee union card. On July 1, 2003, Local 2 Financial Day Secretary Arnold Elmhorst advised Burger that he needed to sign the "out of work" book. Burger refused to sign the book, testifying at trial that he did not sign the book because it meant that he would be the last person to be picked for new employment and he believed that he had greater employment opportunities by approaching companies directly. Local 2 has no written policy requiring its members to sign the out-of-work book in order to be eligible for a reduced fee card.

Local 2 issued Burger a second reduced fee card on July 1, 2003. In July of 2003, Burger filed two more charges with the NLRB: (1) a charge on July 7th complaining that Local 2 had been diverting members' dues from the strike fund to the pay for legal fees and (2) a charge on July 31st

complaining that Local 2 had failed to place its members with employers, failed to file and pursue member grievances and threatened retaliation against members who filed complaints. Both charges were dismissed without hearing.

Burger, Local 2 business manager Frank Christiansen ("Christiansen"), and another union employee, Bradley Stewart ("Stewart"), testified that at the July and August 2003 monthly general meetings, Christiansen noted Burger by name as a person who had been filing complaints with the EEOC and the NLRB. According to testimony by Burger and Stewart, these comments indicated Local 2's retaliation against union members that filed charges.

On September 12, 2003, Burger applied for a third reduced fee card. His application was denied on September 16. The minutes of the September 16, 2003 meeting of Local 2's Executive Board state that Burger's application was denied because "[the] Form was not filled out properly." At trial, the witnesses from Local 2 admitted that the form was filled out properly and that the out-of-work book was not part of the form. Mr. Arnold Elmhorst ("Elmhorst") testified at trial that he recommended to the Local 2 Executive Board ("Executive Board") who should get the reduced fee cards, and the Executive Board made the final decision as to who received a reduced-fee card.

Burger testified that he did not have the money to pay for a full-fee union card because he was not employed. After the reduced-fee card was denied to him in September 2003, he attempted to send Local 2 the money for a reduced-fee card but the checks were returned to him. Burger complied with the requirements of 29 U.S.C. § 626(d) by filing a timely administrative charge with the Illinois Department of Human Rights and the EEOC. Burger received a right to sue letter from the EEOC dated October 20, 2003, and he brought this action.

On March 3, 2004, Local No. 2 sent Burger a letter stating that he was delinquent in paying full union dues for the fourth quarter of 2003 and the first quarter of 2004. At that time, full union dues were $265 per calendar quarter. Dues for members receiving reduced fee cards were $118 per quarter. Burger was expelled from membership in the Union and Local No. 2 for failure to pay dues effective April 1, 2004.

After a jury trial, a jury found for Burger on both the ADEA retaliation claim and the failure to represent claim, and awarded the following damages: for ADEA retaliation (i) $25,000 in back pay, (ii) $6,000 in lost future earnings, and (iii) $2,000 in mental and emotional damages; for failure to represent (i) $50,000 in back pay, (ii) $12,000 in lost future earnings, and (iii) $4,000 in mental and emotional damages.

## Discussion

### Judgment as a matter of law pursuant to Rule 50(b)

At the close of the presentation of Burger's case-in-chief, Local 2 made a timely motion for judgment as a matter of law pursuant to Rule 50(a). The Court denied the motion and allowed the case to go to the jury. Local 2 now renews its motion for judgment as a matter of law pursuant to Rule 50(b) on the basis that no reasonable jury could find that Local 2 retaliated against Burger. Local 2 argues that Burger failed to meet his burden to show that Burger's complaints to the NLRB and the EEOC were a "substantial or motivating factor" in Local 2's decision to deny Burger a reduced-fee card.

When considering a motion to enter judgment as a matter of law pursuant to Rule 50(b), a court must limit its inquiry to "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light

4

most favorable to the party against whom the motion is directed." *Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627, 629 (7th Cir. 1996) (citation omitted); *see also Tart v. Illinois Power Co.*, 366 F.3d 461, 472 (7th Cir. 2004). A court will reverse a jury's verdict under Rule 50 only if "no rational juror could have found for the prevailing party." *Turner v. Miller*, 301 F.3d 599, 602 (7th Cir. 2002). In reviewing a motion for a new verdict, and a court must take care to avoid "supplanting our view of the credibility or weight of the evidence" for that of the jury. *Emmel*, 95 F.3d at 630. A court should be particularly careful when overturning a verdict in employment discrimination cases, as such cases "often involve sensitive and difficult issues of fact, and plaintiffs often have only circumstantial evidence on which to rely." *Tart*, 366 F.3d at 472.

At a trial for retaliatory conduct, the plaintiff must show by a preponderance of the evidence that: 1) he engaged in a statutorily protected activity; 2) there was an adverse action taken by defendant; 3) there exists a causal connection between protected activity and the adverse action. *Sitar v. Ind. Dept. of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003). A causal link may be proved by a showing that the "protected conduct was a substantial or motivating factor in the employer's decision." *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005). "A motivating factor does not amount to a but-for factor or to the only fact, but is rather a factor that motivated the defendant's actions." *Id.* The parties agree that Burger was engaged in a protected activity and that Local 2 took an adverse action in denying the reduced-fee union card.

Local 2 argues that the record reflects that Local 2's Executive Board made its decision to deny the card on the basis of Mr. Elmhorst's recommendation to do so not because of Burger's protected conduct, but rather because Burger did not sign the out-of-work book. Local 2 argues that in order to prove that Burger's protected conduct was a "substantial or motivating factor" in the

Executive Board's decision to deny the card, the jury had to conclude that the statements made by Mr. Christiansen at the monthly union meetings motivated the Executive Board's decision, and that Mr. Christiansen's comments are insufficient evidence on which to base such a connection.

Local 2 places all of its emphasis on Christiansen's comments. When viewing the evidence before the jury as a whole, however, the Court cannot conclude that there was no rational basis for the jury to find in Burger's favor. Christiansen's comments, while one of the pieces of evidence put forth by Burger as circumstantial evidence of retaliation, are not the only evidence. In order to rule in Local 2's favor and grant the Rule 50(b) motion to reverse the verdict, the Court would be required to determine that the testimony about how decisions were made by the Executive Board is more credible than the testimony about, among other things, the policies surrounding the out-of-work book, Christiansen's position in Local 2, Christiansen's statements at the July and August 2003 meetings, and the customary requirements for getting a reduced-fee card.

A determination of the credibility of each witness is the province of the jury. Mr. Christiansen, Mr. Elmhorst. and Mr. Bauman all testified at trial and were subject to cross-examination. It was the jury's decision to find as it did after weighing the evidence presented and assessing the credibility of the witnesses who presented it. There was a rational basis for the jury to find that Burger's protected activity was a motivating factor in Local 2's decision, especially if the jury inferred that the reason presented by Local 2 was not credible and therefore this Court will not overturn the jury's credibility determination.

### Alter Judgment under 59(e)

Both parties move to amend the damages judgment pursuant to Rule 59(e). Motions brought pursuant to Rule 59(e) serve a limited purpose "to correct manifest errors of law or fact or to present

newly discovered evidence." *Russell v. Delco Remy Division of General Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). In this case, both parties agree that the jury returned a back pay damages award in a format that leaves the amount of the damage unresolved and requires clarification from the Court. Local 2 seeks damage remitturs on various legal grounds; Burger seeks an added award on the basis of an ADEA statutory requirement, and seeks an award of costs.

*A. Recovery for Back Pay*

*1. Duplicative Recovery for Back Pay*

The motions filed by both parties address the impact of the jury's decision to award Burger $25,000 in back pay for ADEA retaliation and $50,000 in back pay for Local 2's failure to represent. Prior to instructing the jury, the parties and the Court discussed the back pay section of the verdict form at side bar. The parties raised the potential for an inadvertent duplicative damage award, and agreed that double recovery for an equitable remedy would not be appropriate. At the close of argument on this issue, the Court anticipated the jury instructions combined with the parties' statements during closing arguments would provide adequate instruction to the jury that the equitable damages for each count would be identical, since all of the equitable damages stemmed from the same set of factual events. The jury, however, returned two different back pay figures. Burger now argues that these two factors should be aggregated so that Burger receives $75,000 in back pay, and Local 2 argues that there should receive 50,000 in back pay, the higher of the two amounts awarded.

The Court agrees with the parties that it is not clear how the jury interpreted the damages portion of the jury verdict form in order to come up with two different figures for back pay. A plaintiff may not obtain duplicative recovery solely by pleading multiple legal bases for recovery from the same injury. *See Bragado v. City of Zion Police Dept.*, 839 F. Supp. 551, 555 (N.D. Ill.

1993) ("multiplicity of theories do not warrant multiple damages for a single injury"). While the Seventh Circuit has not addressed this issue, the Second Circuit has faced a similar duplicative recovery. In *Gentile v. County of Suffolk*, the court determined that the jury divided the damages equally between the two claims but meant to award the aggregated damages. 926 F.2d 142, 153-54 (2d Cir. 1991). As clarified by the Second Circuit several years later, however, the *Gentile* jury faced multiple injuries under multiple claims, and it was therefore "conceivable" for the jury to conclude that one damage award would be appropriate but divide the award among several claims. *Conway v. Icahn & Co.*, 16 F.3d 504, 511 (2d Cir. 1994). The *Conway* court reiterated the basic principle that under circumstances where "theories of recovery were base on a single set of facts, and the economic loss sustained was predicated on those unitary facts... the verdicts should be identical and a single recovery theory allowed." *Id.*

Burger admitted at conferences prior to trial - and reiterated in closing arguments before the jury - that equitable relief for economic loss arising out of the same set of facts should be awarded only once. Additionally, the verdict form and the jury award suggest that the jury understood this point. The verdict form contains a heading for the ADEA retaliation claim, then asks for a finding on liability for the ADEA retaliation claim, and then states: "We, the jury, hereby award Robert M. Burger actual damages for back pay, minus the amount which Local No. 2 has proven he could mitigate his damages, in the total amount of: _____." The verdict form repeats this identical phrase two more times, substituting "lost future earnings" and "mental and emotional pain and suffering" for "back pay." Next, the verdict form contains a heading for breach of the fair representation claim, asks for a finding of liability on fair representation, and then repeats the above phrase exactly. The jury awarded exactly twice the amount of damages on the second-listed fair

representation claim as it awarded on the ADEA retaliation claim, for each of the three damages requested. Looking at the jury verdict form, it is entirely possible that the jury felt it should add the damages for fair representation to the damages for ADEA retaliation, and put the "total amount" in the second set of blanks.

The Court will not disturb the awards as written for lost future earnings and emotional damages, because it is also arguable that the jury awarded different amounts of compensatory damages for lost future earnings and for mental and emotional damages, depending on the two claims. But for an equitable remedy of back pay, designed to place Burger where he would have been at this time but for the injury, the Court concludes that Burger cannot recover twice for the same injury, and alters the back pay award to be $50,000.

*2. Liquidated Damages for Willful Retaliation under the ADEA*

Also with respect to back pay, the parties agree that the under the law of this circuit the ADEA retaliation back pay award should be doubled as liquidated damages. A jury ruling that a defendant retaliated for an ADEA claim implicitly also acts as a ruling that the defendant acted wilfully. *See Rose v. Hearst Magazines*, 814 F.2d 491, 493 (7th Cir. 1987) ("[A] jury determination of retaliatory discharge necessarily found 'willfulness'"). Willful acts under the ADEA, in turn, invoke the liquidated damages provision of 29 U.S.C. § 626(b), doubling the amount of back pay as liquidated damages. *See Mathis v. Phillips Chevrolet, Inc.*, 269 F.3d 771, 777 (7th Cir. 2001) ("Under the ADEA, courts are required to assess liquidated damages in the same amount as the compensatory damages if the employer's violation of the statue was 'willful'"). Burger, in tandem with the argument that the back pay should be aggregated, asks that the judgment be amended to add

liquidated damages in the amount of $75,000. Local 2 argues that the liquidated damages claim should be $25,000 because the verdict form only attributed $25,000 to ADEA retaliation.

As with the previous determination that a party may only recover once for back pay, because the loss arises from the same set of facts, the single figure of back pay is the figure that must be doubled pursuant to 29 U.S.C. §626(b). Therefore, the Court amends the judgment to grant Burger an additional $50,000 in liquidated damages for ADEA retaliation pursuant to 29 U.S.C. §626(b).

### B. Remittur for No Rational Basis / Failure to Mitigate

Local 2 asks this Court to amend the judgment to reduce the damages for back pay and future earnings - presently $75,000 and $18,000 respectively - to $1,470, the difference between the price of a reduced-fee union card for two years and a full-price union card for two years. The Court may grant a remittur or a new trial (the choice belonging to Burger) for a jury damages award that bears no rational basis to the damages. *See Haluschak v. Dodge City of Wauwatosa*, 909 F.2d 254, 256-57 (7th Cir. 1990) (trial court must present plaintiff with choice of remittur or new trial). Local 2 argues that no rational basis exists for the jury award because the evidence at trial showed that Burger failed to exercise his duty to mitigate damages when he failed to pay the difference between the reduced-fee card and the full-fee card. These intermediate decision not to pay the difference in fees, argues Local 2, is the proximate cause of Burger's lost wages and lost future earnings because had Burger maintained his union card he would have found union work.

As with Local 2's arguments to overturn the verdict under Rule 50(b), the jury had a rational basis to make the decision it made with respect to back pay and future earnings. Local 2 made the arguments now before the Court in its opening and closing arguments to the jury. The parties also agreed upon and included a specific jury instruction on mitigation. Burger provided the jury with

10

a rational basis to find in his favor, however, through his testimony that his failed to pay the full fee for the union card because he was financially unable to make the additional payments. He also testified that he tried to pay the reduced-fee price, but Local 2 rejected the payments. The jury credited Burger's explanation over Local 2's explanation, and the Court will not disturb the jury's determination that Local 2's decision to deny the reduced-fee card was the proximate cause of Burger's lost wages and lost future earnings.

### C. Reinstatement in Lieu of Lost Future Earnings

Finally, Local 2 asks the Court to strike the lost future earnings awards and instead reinstate Burger into Local 2. Burger responds correctly that the lost future earnings awards are monetary damages, not to be confused with "front pay," an equitable remedy. *See Williams v. Pharmcia*, 137 F.3d 944, 953 (7th Cir. 1998) (explaining the difference between the two remedies and the different forms of calculation required). The Court could impose the equitable remedy of reinstatement into Local 2 in place of front pay, but front pay has not been sought by Burger and is not at issue before the Court. As the *Williams* court explained, lost future earnings compensate a plaintiff for the ongoing effects of the injury, even after the plaintiff is either reinstated or otherwise made whole. *Id.* Therefore, reinstatement into Local 2 would not compensate Burger for the lost future earnings that are captured in the jury's monetary award.

### **Conclusion and Order**

The Court denies Local 2's motion for judgment notwithstanding the verdict pursuant to 50(b) and grants in part Local 2's motion to amend the judgment pursuant to Rule 59(e) to remove improper duplicative recovery by Burger for back pay. The Court grants Burger's motion to amend the judgment pursuant to 59(e). Burger will receive $50,000 in back pay and an additional $50,000

in liquidated damages for willful conduct by Local 2 in violation of 29 U.S.C. § 626(b). The Court does not alter the remainder of the jury award: $6,000 damages for lost future earnings for ADEA retaliation, $12,000 damages for lost future earnings for failure to represent, $2,000 for emotional damages for ADEA retaliation, and $4,000 for emotional damages for failure to represent. Additionally, the Court awards costs to Burger in the amount of $3,241.69.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: June 14, 2006